SPROUT v. OKLAHOMA RY. CO.

No. 34470. Sept. 9, 1952.

*247 P. 2d 972.*

Pierce, Rucker, Mock, Tabor & Duncan and Calvin W. Hendrickson, Oklahoma City, for plaintiff in error.

Richardson, Shartel & Cochran and R. C. Jopling, Jr., Oklahoma City, for defendant in error.

PER CURIAM. Plaintiff's action is brought to recover damages for personal injuries sustained by her while alighting from a bus operated by the defendant upon which she was a paying passenger. The petition alleges and the evidence of the plaintiff tends to show that the bus upon which plaintiff was riding stopped at about dark in the 300 Block on 29th Street in Oklahoma City; that plaintiff was allowed to alight from the same at a place where a hole or depression existed in the ground, and that in alighting from the bus, plaintiff stepped into a depression or hole, fell and sustained personal injuries.

Plaintiff for her cause of action relies upon the allegation that defendant, "***stopped the bus at an unsafe place to allow the plaintiff to alight.".

The evidence of the plaintiff is sufficient to establish (1) that a hole or depression existed in the ground immediately under the step from which plaintiff alighted from the bus; (2) the point where plaintiff alighted was the designated and customary stopping place for such bus in that block; and (3) the existence of this hazardous condition was the proximate cause of the injury sustained by plaintiff, or, to say the least, same was sufficient as against demurrer to the evidence to go to the jury.

The defendant did not file a demurrer to plaintiff's petition, and thereby challenge the sufficiency of the allegation that it did not stop its bus at a safe place for plaintiff to alight therefrom, as actionable negligence.

We are impressed that upon proof of the three facts above set forth, plaintiff made out a prima facie case of negligence.

It is argued in the brief of defendant in error that there was no evidence to show that plaintiff "stepped into a hole." The unquestioned evidence was that plaintiff fell when she put her first foot down onto the ground in alighting from the bus; that a hole described as being about 4 inches deep existed in the surface of the ground at the point where she alighted and plaintiff herself testified:

"As I stepped off, I stepped into the hole and it twisted my foot in such a way that it made my whole body turn, twisted me and threw me down backwards instead of falling frontwards, I fell down backwards."

Next, it is argued: First, that the court should take judicial knowledge of the fact that the designation of bus stops or bus loading and unloading areas on the public streets within the city limits of the city of Oklahoma City, is delegated solely to the city and is actually done by the appropriate police and traffic departments of the city. No authority is cited in support of such contention. Ordinarily, the ordinances of a municipality must be pleaded and proved, if relied upon in an action, just as the laws of a sister state. Barton v. Harmon, 203 Okla. 274,

221 P. 2d 656. In the absence of citation of authority in support of this contention, we are inclined to follow the general rule without further question. And indeed, if such were the case, we fail to see that the operator of a bus line could, with impunity, stop its bus at a dangerous and perilous point, after dark, and permit a passenger to alight therefrom, simply because point had been designated as the stopping place for such bus. At most, evidence of such regulations would go to the question of negligence on the part of the operator of the bus line, which might be considered by the jury in determining if the operator had exercised the degree of care towards its passenger which is required by law.

Defendant makes the second point in its brief that in the case of a bus operator, which is compelled to use the streets and private property as points from which passengers are permitted to enter and alight from their buses, the same rule requiring a high degree of care, which is applicable to transportation companies having control of their roadbeds, stations, platforms and yard, does not apply. No cases are cited from this jurisdiction. Neither is it pointed out that the statutory provision relied upon by the plaintiff, 13 O. S. 1951 §32, which provides:

"A carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill"

is in force in the cases cited in defendant's brief, in support of this contention.

Under the foregoing statutory provision, it is the duty of a carrier to use the "utmost care and diligence" for the safety of their passengers. No exception is made in favor of any particular type of carrier.

We cannot approve of the argument which would permit a public carrier to discharge its passengers at a hazardous point in the nighttime without warning of hidden danger; neither can we approve of the doctrine that a public carrier owes no duty whatever to maintain a safe place for its passengers to alight, simply because it is permitted to discharge them onto the public street or boulevards, or private property.

Defendant in error cites 13 C.J.S., §723, wherein it is recognized that "reasonable care" must be exercised by a carrier which discharges its passengers onto private property, and this without regard to statutory provisions.

We hold that in view of the quoted statute the defendant owed the duty of "utmost care and diligence" for the safe transportation of its passengers, and that the provision extends to the boarding and alighting of the carrier by the passengers, without regard to the point of whether the carrier is compelled to pick up and discharge its passengers onto the public streets, or private property. The carrier has elected to carry on its business in the manner in which it must operate as to picking up and discharging its passengers, and in so doing has placed itself under the terms of the above-cited statute.

It is true that the evidence disclosed that the hole in the ground was covered with grass; likewise, it may be true that defendant has no discretion in the point selected by the city officials for the discharge of its passengers; the evidence disclosed that the witness Emma Butler had stepped in the same hole, less than one week prior to plaintiff's injury, while alighting from a bus, and a fall was averted by someone catching her; the evidence tended to show that the hole was not "fresh" but had existed at that point for some considerable time.

It is clear that a common carrier should be required to exercise some degree of care in the discharge of its passengers, even where compelled to discharge them onto public or private ground controlled by others. In the in-

stant case, in view of the statutory provision, the degree of care is fixed as the "utmost care and diligence."

The difficulty in observation of the hazard created by the existence of the hole, the possible fact that the carrier was compelled to discharge passengers at the point selected by the city officials, and the fact that the ground at that point was owned by a third party, as well as such diligence as the defendant may have exercised in an effort to keep its points of "discharge of passengers" safe, together with all other pertinent facts, might well be considered by the jury in its determination of the issue of lack of care on the part of the defendant in the discharge of its passengers, but certainly the evidence was sufficient as against demurrer to go to the jury.

The judgment of the trial court is reversed, with directions to trial court to grant the plaintiff a new trial and proceed in accordance with this opinion.

This court acknowledges the services of Attorneys Hal Welch, Joe Stamper and D. A. Stovall, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

ARNOLD, C.J., HALLEY, V.C.J., and CORN, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. GIBSON, J. dissents.